IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| Anthony Leon Campbell, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| Paul Othoff, Commander Ward County Jail Operations and Manager for Turnkey Corrections at Ward County Jail; Turnkey Correction, Inc.; Steve Kukowski, Sheriff of Ward County Jail Facility; Leann Bertsch, Director of Department of Corrections, | ) | Case No. 4:15-cv-00143 |
| Defendants. | ) | |

This matter is now before the court for screening pursuant to 28 U.S.C. §1915A. Also, there is a pending motion to dismiss by defendant Bertsch that has been fully briefed by the parties.

## I. BACKGROUND

At least as the time of the filing of the complaint, plaintiff was incarcerated at the Ward County Jail in Minot. In his complaint, plaintiff claims that the prices being charged in the Jail's commissary are excessive because, according to him, they are greater than what persons outside the facility would have to pay for the same items on the open market. Plaintiff contends that the excessive pricing, as well as the acts of defendants causing it, violated federal antitrust laws[1] and his right to equal protection under the Fourteenth Amendment. The only relief that plaintiff seeks is damages. (Doc. No. 7).

One of the defendants that plaintiff wants to sue is Turnkey Correction, Inc. ("Turnkey").

---

[1] In his complaint, plaintiff references the Clayton Act codified at 15 U.S.C. §§ 12 et seq. as modified by the Robinson-Patman Act. Given what follows, the court need not get into the intricacies of federal antitrust law.

1

Plaintiff contends that the excessive pricing is the result of Turnkey being involved with the Jail's commissary but is unclear in terms of its alleged role. For purposes of what follows, it will be assumed plaintiff is claiming that Turnkey is both operating the Jail's commissary and is the supplier of the items sold within it, rather than just being a supplier.

The other persons named as defendants are: Paul Othoff, who is alleged to be the Ward County Jail's commander of operations; Steve Kukowski, the Ward County Sheriff; and Leann Bertsch, the Direct of the North Dakota Department of Corrections and Rehabilitation ("NDDOCR"). There is no mention in the complaint of any of these individuals being sued in their individual as opposed to official capacities; but, in terms of the final outcome here, it does not make a difference.

## II.   STANDARDS GOVERNING INITIAL REVIEW

### A.   Screening requirements

When a prisoner proceeding *in forma pauperis* seeks to sue a governmental entity, officer, or employee, the Prison Litigation Reform Act of 1995 ("PLRA") requires the court to conduct an early screening of the complaint to weed out claims that clearly lack merit with the hope this will help to lessen the burdens imposed by the ever-rising number of prisoner suits, which too often are frivolous and without merit. Jones v. Bock, 549 U.S. 199, 202-03 (2007); Woodford v. Ngo, 548 U.S. 81, 83-84 (2006). In conducting the screening required by 28 U.S.C. § 1915A, the court is required to identify any cognizable claims and to dismiss the complaint, or any part of it, that is frivolous, malicious, fails to state a claim, or seeks monetary relief from an immune defendant.

Neither 42 U.S.C. § 1983 nor the PLRA imposes any heightened pleading requirements. Jones v. Bock, 549 U.S. at 211-12. Consequently, in order to state a cognizable claim, the complaint

need only meet the minimum requirements of Fed. R. Civ. P. 8(a)(2), which are that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam).

The court is obligated to construe a *pro se* complaint liberally and hold it to a less stringent standard than what normally would be required of attorneys. Id.; see also Federal Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008); Solomon v. Petray, 795 F.3d 777, 787 (8th Cir. 2015). This does not mean that the court must accept everything or anything that is filed by *pro se* prisoners, however. In enacting the screening requirement, Congress obviously expected it to be more than a ritualistic exercise and that courts would only allow to go forward those claims that are cognizable, that seek relief from a non-immune party, and that are not obviously frivolous or malicious.

To meet the minimal pleading requirements of Rule 8(a)(2) for stating a cognizable claim, something more is required than simply expressing a desire for relief and declaring an entitlement to it. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 n.3 (2007) ("Bell Atlantic"). The complaint must state enough to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. at 93 (quoting Bell Atlantic, 550 U.S. at 555). And, even though a *pro se* complaint is to be liberally construed, it must also contain enough to satisfy Bell Atlantic's "plausibility standard." E.g., Ventura-Vera v. Dewitt, 417 Fed.Appx. 591, 592, 2011 WL 2184269, *1 (8th Cir. 2011) (unpublished per curiam) (citing Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2007) for the appropriate post-Bell Atlantic standard); see also Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (*pro se* complaints must allege sufficient facts to state a claim). Complaints that offer nothing more than labels and conclusions or a formulaic

3

recitation of the elements are not sufficient. See id. Frivolous claims are those that are clearly baseless, fanciful, fantastic, or delusional. See Denton v. Hernandez, 504 U.S. 25, 32-34 (1992).

## III. DISCUSSION

### A. Antitrust claim

As noted above, plaintiff seeks only damage relief in this action. Consequently, plaintiff's complaint fails to state a claim for which relief can be granted because each of the defendants are entitled to immunity from plaintiff's antitrust claims for damages, albeit for different reasons.

The two county defendants sued in their official capacities are entitled to immunity by virtue of 15 U.S.C. § 35(a), which reads as follows:

> **(a) Prohibition in general**
> No damages, interest on damages, costs, or attorney's fees may be recovered under section 4, 4A, or 4C of the Clayton Act (15 U.S.C. 15, 15a, or 15c) from any local government, or official or employee thereof acting in an official capacity.

See, e.g., McGuire v. Ameritech Services, Inc., 253 F.Supp.2d 988, 1016 (S.D. Ohio 2003) ("McGuire") (dismissing claim for damages under 15 U.S.C. § 15 brought against local officials operating county jails).

Likewise, Turnkey is similarly immune based on 15 U.S.C. § 36(a), which reads:

> **(a) Prohibition in general**
> No damages, interest on damages, costs or attorney's fees may be recovered under section 4, 4A, or 4C of the Clayton Act (15 U.S.C. 15, 15a, or 15c) in any claim against a person based on any official action directed by a local government, or official or employee thereof acting in an official capacity.

This is because the Ward County Jail is a county facility operated by the Ward County Sheriff. N.D.C.C. §§ 11-10-20, 11-15-03, 12-44.1-02. And, whatever services and goods Turkey provides is necessarily at the direction of the Ward County Sheriff thereby entitling Turnkey to immunity from damages. See McGuire, 253 F.Supp.2d at 1016 (dismissing claim for damages under 15

U.S.C. § 15 brought against private defendants providing telephone services to jails at the direction of local officials).

Finally, any claim against defendant Bertsch in her official capacity as NDDOCR Director for antitrust violations is a claim against the State for which the State has Eleventh Amendment immunity as to any claim for damages. E.g., Mirch v. Beesely, 316 Fed.Appx. 643 (9th Cir. 2009) (dismissing claim for monetary damages for alleged antitrust violations under the Sherman and Clayton Acts against the Nevada State Bar Association and its employees on grounds of immunity under the Eleventh Amendment since the Bar Association was an arm of the State); see Will v. Michigan Dept. of State Police, 491 U.S. 58, 64 n.5 (1988) (drawing distinction between an antitrust claim brought against a State for injunctive relief and one seeking damages and noting that the trial court in an earlier antitrust case considered by the Court had dismissed the damage claim on Eleventh Amendment grounds). Further, defendant Bertsch would also have state-action ("Parker") immunity based on the seminal case of Parker v. Brown, 317 U.S. 341 (1943); see, e.g., North Carolina State Bd. of Dental Examiners v. F.T.C., __ U.S. __, 135 S.Ct. 1101, 1110 (2015) ("Dental Examiners"). This is because Bertsch is the Director of the NDDOCR, which is a department of the State and not a board comprised of otherwise private active market participants like in Dental Examiners.[2] Finally, apart from any immunity, plaintiff has failed to plead sufficient

---

[2] Even if plaintiff had sought relief other than money damages, Director Bertsch would likely be entitled to Parker immunity for the reasons stated. Also, while Parker immunity does not automatically extend to municipalities or political subdivisions of the States since they are not themselves sovereign, "substate governmental entities do receive immunity from antitrust scrutiny when they 'act pursuant to state policy to displace competition with regulation or monopoly public service.'" F.T.C. v. Phoebe Putney Health System, Inc., __ U.S.C. __, 133 S.Ct. 1003, 1010-11 (2013) ("Phoebe Putney") (quoting Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. 365, 370 (1991)). Finally, in certain circumstances, private parties who carry out state functions are entitled to the benefit of Parker immunity. Id. at 1010.

A two-part test is employed to determine whether anticompetitive conduct of nonsovereign actors should be deemed state action and, for that reason, shielded from federal antitrust laws. First, the State must have articulated a clear policy to allow the anticompetitive conduct. Second, the State must provide active supervision of the anticompetitive conduct. Dental Examiners, 135 S.Ct. at 1111-12. An exception is made for local governmental entities,

facts to make out a plausible claim of an antitrust violation against defendant Bertsch.

---

however, which only have to satisfy the first part of the test. Phoebe Putney, 133 S.Ct. at 1011. In order to meet the "clear articulation" test, it is not necessary that a state legislature expressly state in a statute or its legislative history that it intends for the delegated action to have anticompetitive effect. Rather, it is sufficient if the anticompetitive effect was a foreseeable result of what was authorized. Id.

In North Dakota, the State Legislature has (1) made the incarceration of inmates at the county level a public function through its requirement that counties either provide county jails or contract with other governmental entities for housing inmates, and (2) required that county sheriffs operate the jails, with the sheriff being an elected official whose office is provided for both under state statutory law and the North Dakota Constitution. See N.D. Const. Art. VII, § 11; N.D.C.C. §§ 11-10-20, 11-15-03, & 12-44.1-02. Further, the State Legislature has enacted N.D.C.C. ch 12-44.1, which regulates the operation of correctional facilities, including county jails. Among other things, ch. 12-44.1: (1) requires each facility to develop and periodically update a manual for operating the facility; (2) governs the treatment of inmates and proscribes inmate rights; (3) grants the NDDOCR the authority to promulgate minimum standards for the construction and operation of correctional facilities; and (4) requires the NDDOCR to annually conduct an inspection of each facility with respect to health and safety, fire and life safety, security, rehabilitation programs, recreation, treatment of inmates, and personnel training. Finally, the NDDOCR has promulgated detailed jail rules and standards that even more closely regulate jails and their operations. See www.nd.gov/docr/county/docs/NORTH DAKOTA CORRECTIONAL FACILITY RULES 2014(2).pdf (last accessed February 9, 2016).

Given all of this, the North Dakota Legislature clearly has made incarceration of inmates a governmental function, i.e., something that will generally be done by governmental entities and not the private sector, with the effects of that policy upon competition being clearly foreseeable. Further, the State's policy of government-operated correctional facilities clearly encompasses the ordinary incidents of incarcerating inmates including, for example, providing food, clothing, routine medical care, and recreational opportunities - all things that are subject to explicit regulation by the State and for which the State does not require be contracted out to the private sector. Finally, there is no reason why the same would not be true for a jail's operation of a commissary, which is a minor aspect of any county jail's operation, if it decides to offer one, and serves only inmates - a market with respect to which the State has generally eliminated competition. The net result of all of this is that the "clear articulation" requirement appears to be satisfied thereby entitling the county defendants to Parker immunity.

As for Turnkey, the "clear articulation" part of the two-part test is likely satisfied for the reasons already expressed and the second part of the two-part test (the "active supervision requirement") is likely satisfied by the fact that Turnkey is subject to the direct control of the Ward County Sheriff, who, in turn, is subject to removal from office by the Governor under N.D.C.C. § 44-11-01 for acts of misconduct, malfeasance, or neglect of duties and ultimately by the voters in the next election if they are dissatisfied with his or her performance. Also, Turnkey's ability to operate is subject to the indirect control of the State in two respects. First, although the NDDOCR has chosen not to directly regulate jail commissaries as of this point, it undoubtedly has the legislative authority to do so if it deemed it necessary to carry out its responsibilities under N.D.C.C. ch.12-44.1. Second, the operation of jail commissaries are more generally subject to the statutory provisions governing the treatment of inmates and inmates rights set forth in N.D.C.C. ch. 12-44.1 (e.g., the right of inmates to equal treat) as well as NDDOCR review generally of inmate treatment. Hence, Turnkey is also likely entitled to Parker immunity.

Not surprisingly, whether based upon a similar analysis or more general reasoning, a number of courts have concluded that Parker immunity should extend to the operation of commissaries by state or local governmental entities. See, e.g., Wheeler v. Beard, No. 03-4826, 2005 WL 1217191, at ** 2-7 (E.D. Pa. May 19, 2005); Dehony v. S.C.Dept. of Corr., Nos. 0:94-3169-21BD, 3:94-3169-21D, 1995 WL 842006, at *1 (D.S.C. July 31, 1995) aff'd 72 F3d 126 (4th Cir. 1995) (South Carolina Department of Corrections entitled to Parker immunity as a state agency from an antitrust claim over the operation of a prison canteen); Guyer v. Frame, No. 85-3808, 1985 WL 4984, at *2 (E.D. Pa. Dec. 20, 1985) (rejecting claim of antitrust violation based on alleged excessive commissary charges brought against a county prison).

### B. Alleged violation of federal equal protection rights

Generally speaking, prisoners have no constitutional right of access to a jail commissary. See, e.g., Tokar v. Armontrout, 97 F.3d 1078, 1083 (8th Cir.1996) ("[W]e note that we know of no constitutional right of access to a prison gift or snack shop...."); Moore v. Ozmit, No. 3:10-3041, 2012 WL 762460, at *10 (D.S.C. Feb. 16, 2012) (there is no freestanding constitutional right to canteen privileges). Further, once a jail voluntarily sets up a commissary or provides for commissary services, there is no constitutional requirement that the jail must offer commissary items for sale at or near what the cost might otherwise be to the public if the same items were purchased locally on the open market. See, e.g., LaPlante v. Lovelace, No. 2:13-cv-32, 2013 WL 5572908 at *11 (W.D. Mich. Oct. 9, 2013) ("Federal courts consistently have held that prisoners have no right to purchase products at regular retail prices."). Further, governmental officials can certainly discriminate between prisoners and the general public, and there is no allegation here that plaintiff was being charged more for commissary items than other inmates with whom he was similarly situated. In short, plaintiff's claim of denial of equal protection under the Fourteenth Amendment based upon an alleged pricing of commissary items that is greater than what the public might pay is without merit on its face.[3] See, e.g., Hernandez v. Pugh, No. 4:12-cv-0923, 2012 WL 6113617,

---

[3] The State is also correct that there is Eleventh Amendment immunity for the claim of alleged constitutional violation being brought against defendant Bertsch. Under Eighth Circuit precedent, this court is required to assume that public officials are being sued in their official capacities unless there is a clear expression to the contrary. See, e.g., Remington v. Hoopes, 611 Fed. App'x 883, 884-85 (8th Cir. 2015) ("[W]hen a plaintiff's complaint is silent or otherwise ambiguous about the capacity in which the plaintiff is suing the defendant, our precedent requires us to presume that the plaintiff brings suit against the defendants in only their official capacities."); Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999). The net result of this is that plaintiff has no claim against defendant Bertsch for alleged violation of his equal protection rights. This is because any suit against Bertsch in her official capacity is a suit against the State, which has Eleventh Amendment immunity from any claim for damages under 42 U.S.C. § 1983 for violation of federal civil rights. See, e.g., Kentucky v. Graham, 473 U.S. 159, 165-69 (1985); Reynolds v. Dormire, 636 F.3d 976, 981 (8th Cir.2011) (state officials sued in official capacity possess Eleventh Amendment immunity from damage claims).

7

at **6-7 (N.D. Ohio Dec. 10, 2012) (rejecting a claim of denial of equal protection with respect to allegedly excessive commissary charges); Guyer v. Frame, No. 85-3808, 1985 WL 4984, at *1 (E.D. Pa. Dec. 20, 1985) (same).

## IV. RECOMMENDATION

The undersigned **RECOMMENDS** that defendant Bertsch's motion to dismiss as to her be granted (Doc. No. 15) and that plaintiff's complaint be otherwise dismissed in its entirety pursuant to 28 U.S.C. § 1915A for failure to state a claim and that the dismissal be without prejudice with respect to his claims of antitrust violation and with prejudice with respect to his equal protection claim.

## NOTICE OF RIGHT TO FILE OBJECTIONS

Pursuant to D.N.D. Civil L.R. 72.1(D)(3), any party may object to this recommendation within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file appropriate objections may result in the recommended action being taken without further notice or opportunity to respond. Because plaintiff is incarcerated the deadline for filing objections shall be extended to March 17, 2016.

Dated this 17th day of February, 2016.

/s/ Charles S. Miller, Jr.
Charles S. Miller, Jr., Magistrate Judge
United States District Court